NOT DESIGNATED FOR PUBLICATION

No. 113,383

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DONNA L. HUFFMAN, CRAIG A. REINMUTH,
and
LAURREL HUFFMAN,
*Appellants*,

v.

STORMONT-VAIL HEALTHCARE, INC., STORMONT-VAIL, INC., STORMONT-VAIL
SERVICES, INC., MICHELLE SCHIERLING, M.D., EKWENSI GRIFFITH, D.O.,
and
AMERICAN COLLEGE OF SURGEONS,
*Appellees.*

MEMORANDUM OPINION

Appeal from Jefferson County District Court; PHILLIP L. SIEVE, judge. Opinion filed July 8, 2016. Affirmed.

*Donna L. Huffman*, of The Law Office of Donna L. Huffman, of Oskaloosa, for appellants.

*Mary E. Christopher* and *Alison J. St.Clair*, of Goodell, Stratton, Edmonds & Palmer, L.L.P., of Topeka, for appellees.

Before MALONE, C.J., BUSER and BRUNS, JJ.

*Per Curiam*: Donna L. Huffman, Craig A. Reinmuth, and Laurrel Huffman (collectively Plaintiffs) filed a civil lawsuit against Stormont-Vail Healthcare, Inc., Stormont-Vail, Inc., Stormont-Vail Services, Inc., Michelle Schierling, M.D., Ekwensi Griffith, D.O., and the American College of Surgeons (collectively Defendants). Later, the district court issued an ex parte order granting Plaintiffs a "good cause" extension of

1

time to serve process pursuant to K.S.A. 2015 Supp. 60-203(a)(1). Defendants challenged the validity of the extension, however, and the district court found, in retrospect, that its ex parte order was invalid because Plaintiffs had not shown good cause. Because of Plaintiffs' failure to serve Defendants within 90 days of filing their petition, their action was not commenced before the applicable statute of limitations expired. In part, as a result of this failure, the district court dismissed Plaintiffs' case with prejudice and they appealed. After carefully reviewing the record on appeal and considering the parties' briefs and oral arguments, we affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On June 24, 2011, Donna was involved in an automobile accident, and paramedics transported her to Stormont-Vail Hospital (Stormont-Vail) where she received treatment for her injuries and was discharged later that day. Almost 2 years later, on June 21, 2013, Plaintiffs filed a lawsuit against Defendants for damages they allegedly sustained due to the medical care Donna received at Stormont-Vail and their billing practices used after providing her medical services. Stormont-Vail, Inc., Stormont-Vail Services, Inc., and the American College of Surgeons were later dismissed from the case either voluntarily or without objection from Plaintiffs.

In their petition, Plaintiffs raised the following claims:  negligence; negligence per se; negligent failure to provide statutory trauma center treatment; medical malpractice; tortious inference with a contract or, alternatively, tortious interference with a prospective business advantage; loss of consortium; pain and suffering; outrageous conduct causing severe emotional distress; and misrepresentation or fraud. On appeal, the parties agree that under K.S.A. 60-513 the statute of limitations for these claims is 2 years.

The focus of this appeal is on the Kansas statute relating to service of process. Under K.S.A. 2015 Supp. 60-203(a)(1), a civil action is commenced at the time the

2

petition is filed with the clerk of the court if service of process is obtained within 90 days. District courts may, however, extend this 90-day period for "an additional 30 days upon a showing of good cause by the plaintiff." See K.S.A. 2015 Supp. 60-203(a)(1). If service is not effected during the initial 90-day period or the properly extended 120-day period, the civil action is considered commenced on the date of service of process or first publication. K.S.A. 2015 Supp. 60-203(a)(2). As a result, for Plaintiffs' lawsuit to be considered timely, Plaintiffs needed to properly serve Defendants with process no later than September 19, 2013. See K.S.A. 2015 Supp. 60-203(a)(1).

But on September 13, 2013, the district court signed an ex parte order granting Plaintiffs' "application for the extension of time . . . [f]or good cause shown," which gave them until October 21, 2013, to effect service. See K.S.A. 2015 Supp. 60-206(a)(1)(C). The order, which shows a file stamp date of September 16, 2013, did not explicitly state a finding of "good cause," nor did it specify why Plaintiffs needed an additional 30 days to serve Defendants. Moreover, a written motion for extension of time was not filed in the district court in conjunction with the order.

On November 22, 2013, Defendants moved to dismiss Plaintiffs' case, with prejudice, due to improper service of process. Defendants contended the district court improperly granted Plaintiffs' request for a 30-day extension of time to serve process. They argued that due to Plaintiffs' failure to file a written motion, Plaintiffs had not shown good cause because there was "no record that they demonstrated *any* cause." Defendants also argued that even if Plaintiffs had attempted to show good cause, they would have been unable to do so because the record did not show any reasonable and diligent efforts to serve process prior to obtaining the extension. In support, Defendants noted that the district court clerk issued summonses only the day before the district judge signed the ex parte order.

3

Plaintiffs responded to the motion, disputing Defendants' claim that they failed to make any reasonable and diligent attempts to serve process prior to requesting an extension because "the petition, various letters, and communications occurred between Plaintiffs and Defendants[,] . . . and [Donna] . . . erroneously believed Counsel [for Defendants] would accept service [on their behalf.]" With regard to Defendants' contention that they had failed to demonstrate any cause for the extension, Plaintiffs attached a written motion to their response. The motion, which was signed by Donna, was dated September 10, 2013, and was not file stamped. In the motion, Donna alleged the "[p]arties initially communicated and provided a copy of the complaint delaying service while communicating," and more time was required because:

"On Friday, September 6, 2013[,] Plaintiffs were advised . . . outside Counsel will be retained and anticipates they will accept service however one party is out of state and in an abundance of caution as service impacts jurisdiction under potential statute of limitations for some claims an [*sic*] a request for an additional 30 days is made."

Donna also noted that retained counsel would be "entering an appearance for Plaintiffs, if [he or she had] not already [done so]."

Subsequently, Defendants challenged Plaintiffs' reliance on the motion for extension of time because it was unclear whether the motion was actually provided to the district court prior to the issuance of the ex parte order. Additionally, Defendants argued that while Kansas caselaw provides that good cause generally does not exist if a motion is not filed, even if Plaintiffs filed a timely motion, the reasons Donna cited were insufficient to establish good cause. Defendants also claimed it was unreasonable for Donna to assume that Defendants' counsel would accept service, because "[a]t no time prior to the filing of [P]laintiffs' [p]etition did [D]efendants or counsel for [D]efendants indicate that service on counsel would be deemed acceptable." In fact, on September 13,

4

2013, Defendants' counsel had informed Donna that outside counsel would not be accepting service.

The district court held a hearing on Defendants' motion to dismiss on January 16, 2014. At the hearing, the district judge explained that while he had a "pretty vivid recollection" of receiving the ex parte order Plaintiffs drafted, he had "no recollection" of receiving a motion, and he asked Plaintiffs' counsel, Dennis Hawver, to address this situation because he had "real serious reservations . . . about the validity of that extension." In response, Hawver insisted that Donna had "electronic proof of transmission . . . and . . . a witness that [who would] testify that he mailed [it]." Hawver then stated:  "[W]e have a strange situation here in [the] Jefferson County Clerk's Office where my client, when she is acting as counsel, on occasion her motions are [intentionally] not filed even though they are submitted." As proof, Hawver offered documentation from another Jefferson County civil case, which he claimed showed that it was "a pattern and practice" of the clerk not to file motions. The district judge, however, discounted this information because he wanted "to keep focus on this case."

Donna then made the following remarks:

"Very briefly—I appreciate the leniency of the Court. I have on my computer—which the Court can confirm when they get home, or feel free to look on my computer—that there was a—I emailed you a copy of the fax that I sent to your fax number, that I had, on September 10th[.] . . . And I have the e-mail to you that has one single attachment that has the motion in the same order, and then on the 13th you responded that you were signing the order, you would get it to the clerk.

"And I only point that out because there seems to be some confusion there, and I'm just here to refresh your recollection. I know you can check that on your computer, or you can look at mine, but I—I know you have a lot of cases, Your Honor, but the motion was with the order."

5

The district judge questioned the parties as to the *Le v. Joslin*, 41 Kan. App. 2d 280, 285-89, 202 P.3d 677 (2009), case which he stated stood for the proposition that "'[i]f good cause was not shown . . . at the time the judge signed the order . . . then the order [was] invalid, and it [could not] be later rehabilitated by counsel bringing in additional facts.'" Defendants agreed with this interpretation of *Le*, but Hawver claimed that Donna's motion demonstrated that good cause existed, at that time, for several reasons: (1) While the motion did not mention that Donna had brain damage, she requested the extension "out of an abundance of caution, knowing that she was brain damaged . . . and . . . was aware of her limitations"; (2) Donna needed additional time to serve process because she was attempting to retain counsel; and (3) Donna anticipated that Defendants' counsel would accept service. Additionally, when asked if she tried to serve Defendants prior to requesting an extension, Donna replied, "[W]e had given them the—the draft—the petition, and [Hawver wrote] a letter and they wanted to confer."

Ultimately, the district judge granted Defendants' motion to dismiss. In ruling, the district judge stated:

> "Let me . . . just say this: I have no recollection of . . . seeing that [motion] as support of my signing the order extending the time for service. I do have vivid recollection—pretty vivid recollection—of receiving that order, I believe, as an attachment to an e-mail—maybe it was in regular mail; I can't remember for sure—from Ms. Huffman in which she request[ed] an extension of time for service—30 day extension, statutory; and I signed that.
>
> "But I can—I can say this without any reservation: That in signing that order I did not make a finding that there was good cause for extending it, and I think that under all these circumstances that I just committed plain error in signing that order extending the time for service."

The district judge also found that, pursuant to K.S.A. 2015 Supp. 60-203(a)(1) and *Le*, Plaintiffs failed to sustain their burden to demonstrate the good cause necessary to

6

obtain a 30-day extension because Plaintiffs failed to file any written motion, made no reasonable and diligent attempts to serve Defendants prior to requesting the extension, and the motion Plaintiffs attached to their response to Defendants' motion to dismiss bore "no indicia of having been filed with the [c]ourt, and [it merely] indicate[d] [that] the 30-day extension of time was sought 'in an abundance of caution,'" which did not qualify as good cause. Alternatively, the district judge also found that Plaintiffs had failed to properly serve Defendants within 120 days of the filing of the lawsuit.

After the January 16, 2014, hearing and prior to the issuance of a final journal entry, Plaintiffs filed a motion seeking the district judge's recusal and lodged several objections to Defendants' proposed journal entry. The district judge denied the motion for recusal on October 15, 2014, and 5 days later, on October 20, 2014, he filed his final journal entry regarding Defendants' motion to dismiss. Four days later, on October 24, 2014, Plaintiffs moved for reconsideration of the recusal decision and filed a document entitled "Premature Notice of Appeal."

Although Plaintiffs' recusal motion was reconsidered, the original denial was ultimately affirmed in a journal entry filed on February 4, 2015. Twenty days later, on February 24, 2015, Plaintiffs filed a notice of appeal. Plaintiffs docketed their appeal on March 30, 2015.

Shortly thereafter, Defendants moved our court for an involuntary dismissal of Plaintiffs' appeal. Defendants argued that Plaintiffs failed to file a timely notice of appeal because Plaintiffs filed their notice of appeal more than 30 days after the district court filed its October 20 journal entry. Although Defendants acknowledged that Plaintiffs filed a "Premature Notice of Appeal" on October 24, Defendants, relying upon Kansas Supreme Court Rule 2.03 (2015 Kan. Ct. R. Annot. 13), insisted that Plaintiffs' "Premature Notice of Appeal" did not qualify as an effective notice of appeal because it

was filed *after* the district court entered its final judgment in the case, rather than before. Unpersuaded by Defendants' argument, our court retained Plaintiffs' appeal.

JURISDICTION

At the outset, Defendants request reconsideration of our court's decision to deny their motion to involuntarily dismiss Plaintiffs' appeal on jurisdictional grounds. In their brief, Defendants merely reiterate the arguments they made previously in support of their motion. We exercise unlimited review over jurisdictional issues. *In re T.S.W.*, 294 Kan. 423, 432, 276 P.3d 133 (2012).

We concur with the prior finding of our court that we have jurisdiction over this appeal. As we stated:

> "Appellees' motion for involuntary dismissal is denied. . . . Appellants filed a notice of appeal well within 30 days of the district court's October 20, 2014 ruling. It is true that Appellants did not docket an appeal within 21 days of the filing of this notice of appeal, but the 21-day deadline for docketing is not jurisdictional. See *Adams v. St. Francis Regional Med. Center*, 264 Kan. 144, 151, 955 P.2d 1169 (1998). Appellants' timely-filed notice of appeal gives this court jurisdiction over the rulings made in the district court's October 20, 2014 journal entry. Appellants' February 24, 2015 notice of appeal gives this court jurisdiction over the district court's February 2015 rulings relating to recusal. Both of these issues were docketed as one appeal, and this court has jurisdiction over the appeal."

PLAINTIFFS' FAILURE TO ADDRESS ALTERNATIVE GROUNDS FOR DISMISSAL

The district court dismissed the Plaintiffs' case on *two* grounds, the invalidity of the extension order and, *alternatively*, Plaintiffs' failure to properly serve Defendants within 120 days. Specifically, the district court determined that Plaintiffs failed to comply with the statutory procedure outlined in K.S.A. 2015 Supp. 60-303 and K.S.A. 2015

Supp. 60-304 when they attempted to serve Stormont-Vail, as "[t]he return receipt [P]laintiffs attached to their [r]eturn of [s]ervice . . . was not signed by Stormont-Vail Health*Care*, Inc.'s registered agent, Jim Kilmartin, nor did the person who signed the return receipt indicate his status as an agent able to accept service of process." Similarly, Plaintiffs' purported service on Drs. Griffith and Schierling was deemed improper because Plaintiffs did not attach copies of return receipts evidencing delivery to the returns of service. Moreover, the printouts from the United States Postal Service website that Plaintiffs did attach "state the time and date of delivery and the city and state where delivery was made, but . . . do not state the nature of the process, to whom delivered, the address where delivered, or the person or entity effecting delivery."

Inexplicably, Plaintiffs do not challenge this alternative basis for the district court's dismissal order. Instead, they focus solely upon the propriety of the district court's conclusion that they failed to show good cause for an extension of time to serve process upon Defendants. Issues not briefed by the appellant are deemed waived and abandoned. *Superior Boiler Works, Inc. v. Kimball*, 292 Kan. 885, 889, 259 P.3d 676 (2011).

Importantly, an appellant's failure to address all of the alternative grounds for the district court's judgment renders the issues on appeal academic and unassailable. See *Greenwood v. Blackjack Cattle Co.*, 204 Kan. 625, 627-28, 464 P.2d 281 (1970) (when district court's decision is based on alternative grounds, appellant's failure to challenge both grounds on appeal "renders unnecessary" a decision on the issue raised); *Parker v. Mid-Century Ins. Co.*, 25 Kan. App. 2d 329, 332, 962 P.2d 1114 (1998) (appellant did not challenge one of the district court's conclusions of law, and the ruling was deemed conclusive).

We conclude that Plaintiffs' appeal necessarily fails because even if the district court erred when it found the extension order was invalid, Plaintiffs' cause of action is still time-barred by the statute of limitations due to their failure to challenge the district

9

court's determination that they did not properly effect service within 120 days of the filing of their petition. Nevertheless, for the sake of completeness, we will review the other basis for the district court's decision.

## THE VALIDITY OF THE EX PARTE EXTENSION ORDER

The central issue raised on appeal is whether the district court erred when it dismissed Plaintiffs' case, with prejudice, on the basis of improper service of process. In resolving this issue, we consider the propriety of the district court's finding that Plaintiffs failed to demonstrate good cause prior to obtaining the ex parte extension order.

We exercise unlimited review over a district court's decision on a motion to dismiss. *Mangus v. Stump*, 45 Kan. App. 2d 987, 991, 260 P.3d 1210 (2011), *rev. denied* 293 Kan. 1107 (2012); *Baeza v. Kemal*, No. 113,057, 2015 WL 7162332, at *4 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* December 13, 2015, *cross-petition for rev. filed* December 23, 2015. Moreover, in order to resolve Plaintiffs' arguments concerning the existence of good cause, we must interpret and apply K.S.A. 2015 Supp. 60-203(a), which is a question of law subject to de novo review. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

A showing of good cause by the plaintiff is a condition precedent to granting an extension of time to serve process under K.S.A. 2015 Supp. 60-203(a)(1). *Le*, 41 Kan. App. 2d at 285. Moreover, a plaintiff may not "first obtain the [extension] order and then, when challenged, at a later date actually establish her grounds for good cause." *Finley v. Estate of DeGrazio*, 285 Kan. 202, 209, 170 P.3d 407 (2007). As a result, Plaintiffs must overcome the district court's finding that they failed to show good cause prior to obtaining an extension of time, because they did not "file any written motion in connection with the [proposed] [o]rder."

10

Plaintiffs claim the district court's findings were not only erroneous, they were arbitrary and unreasonable because the district judge based his decision upon his inability to recall receiving the motion. Plaintiffs point to the evidence they presented which they claim established that the motion was provided to the district judge via email and its absence from the record was due to "some clerical or other misunderstanding" on the part of the court clerk. In support, Plaintiffs rely on the email Donna mentioned at the hearing and the documentation she showed the district judge pertaining to another Jefferson County civil case. Of note, Plaintiffs did not request that any documentation pertaining to the email be added to the record at the hearing on Defendants' motion to dismiss.

Plaintiffs filed a "Notice of Filing the Proffers" in the district court on February 24, 2015, the same day they filed their second notice of appeal, and several documents are attached to the notice. These documents comprise the evidentiary basis relied upon by Plaintiffs in support of their arguments.

First, Plaintiffs attached a document that appears to be a copy of an email Donna sent the district judge. This email, dated September 10, 2013, reads:

> "I called your home and left a message. I am sending this to you by email attachment as I couldn't get the fax to work (I'm sure I'm not doing it correctly and apologize).
> "If you wouldn't mind reviewing at your earliest convenience and advising if this is approved.
> "I am happy to discuss or supplement any or all of them further at your discretion or request."

The document further indicates that the email contained one attachment labeled "178168283-153457072.pdf (338K)."

Second, Plaintiffs' notice of appeal contains a copy of a motion and proposed order, which Donna claims she attached to this email. The top left-hand corner of the

11

motion contains the notation "Sep 10 13 03:57p" and "p.4" appears in the top right-hand corner. The proposed order contains an identical notation in the top left-hand corner, but the top right-hand corner states: "p.5."

Third, Plaintiffs attached what appears to be a follow-up email Donna asserts she sent the district judge on September 12, 2013, which states:

> "I am not meaning to be pushy but noticed you were working this morning and wondered
> if you had the chance to make a determination on the motions to extend service I had sent
> Tuesday or would like more information before deciding.
> "I appreciate your consideration of the matter and look to hear from you."

Apparently, 2 days later, the district judge responded: "I will sign and forward to the Clerk's office on Monday the 16th."

Fourth, Plaintiffs attached two documents from the other, unrelated Jefferson County case: (1) a Record of Activity (ROA) detailing the filings in the case which contains a handwritten note indicating the court clerk told Donna her "motion" would be filed if the judge did not sign the order, and (2) a motion for default judgment, which was file stamped on September 23, 2013.

Having reviewed the four categories of documentation, we find the district court did not err when it discounted this evidence. Quite simply, none of this documentation proves that Plaintiffs forwarded the district judge a motion for extension of time with the proposed extension order.

With regard to the purported email Donna sent on September 10, 2013, the printout Plaintiffs attached to their notice does not prove that the motion was actually attached to the email because only one attachment with a generic label is listed on the

12

email. It is also unclear whether Plaintiffs sent the email because the printout does not contain any indicia that it originated from an email server. Significantly, the following statement appears at the bottom of the other emails Plaintiffs attached to their notice: "https://mail.aol.com/webmail-std/en-us/PrintMessage." It is unknown why the September 10, 2013, email does not contain the same notation.

Similarly, the documentation from the other, unrelated Jefferson County case does not prove that Plaintiffs' motion was absent from the record due to an error by the court clerk. Unlike the motion in this case, the motion for default judgment in the other case that was supposedly never filed *is* file stamped. Moreover, the file stamp raises questions concerning the authenticity of the handwritten note reflected on the ROA report, because the report covers a timespan predating the file stamp date and, thus, neither the motion nor the order the clerk apparently filed in lieu of the motion are reflected on the report.

For their part, Defendants do not address the Plaintiffs' notice of proffers, nor the sufficiency of the evidence attached to it. Instead, Defendants note that Plaintiffs' purported motion has no file stamp, and they urge us to find, as the district court did, that the facts of this case are analogous to *Le*.

The Defendants argue that in *Le*, our court found that a "plaintiff [is] required to demonstrate good cause prior to obtaining an extension and [the plaintiff may not] first obtain the extension and establish the grounds later when challenged.]" In *Le*, Le filed a negligence action, and she obtained a 30-day extension of time to serve process without filing a written motion. The defendant challenged the ex parte extension order on the grounds that Le failed to make a proper showing of "good cause." 41 Kan. App. 2d at 283. The district court agreed, reversed its prior finding of "good cause," and dismissed Le's cause of action because it was barred by the applicable statute of limitations. 41 Kan. App. 2d at 283.

13

On appeal, Le contended the district court erred when it found the ex parte extension order was not supported by "good cause." 41 Kan. App. 2d at 284. On appeal, our court noted that, although the extension order contained "a conclusory statement" indicating it was issued for good cause shown, the appellate record was devoid of any information that supported this statement. 41 Kan. App. 2d at 285-86. Our court then explained, "Our Supreme Court and this court have noted that the better practice, if not the required procedure to request such an extension, *is by written motion* under Rule 133 (2008 Kan. Ct. R. Annot. 216)." 41 Kan. App. 2d at 285-86. Without a written motion, our court could not determine "what showing of good cause was made" by Le. 41 Kan. App. 2d at 286. Consequently, our court found that Le failed to satisfy the condition precedent to obtaining an extension of time to serve process because she "needed to show good cause *before* she obtained the 30-day extension, not when the extension [was] later challenged." 41 Kan. App. 2d at 287.

Similar to *Le*, the record does not support Plaintiffs' claim that they submitted their written motion to the district judge before he signed the ex parte extension order. As a result, the district court did not err when it granted Defendants' motion to dismiss Plaintiffs' case as time-barred because Plaintiffs failed to show good cause prior to obtaining an extension of time.

In addition to the district court's finding that Plaintiffs failed to establish good cause prior to obtaining the 30-day order of extension, the district court also found that Plaintiffs were required to show a reasonable and diligent attempt at service prior to requesting an extension and the Plaintiffs had failed to make this requisite showing. On appeal, Plaintiffs challenge the district court's additional findings. Given our holding on the primary issue, however, we decline to address the other grounds found by the district court to justify its legal conclusion that the extension order was invalid.

14

Relying upon *Fisher v. DeCarvalho*, 298 Kan. 482, 483, 314 P.3d 214 (2013), Plaintiffs assert that despite any "irregularity in form or procedure or any defect in making service," Defendants were properly served under K.S.A. 2015 Supp. 60-204, because Defendants were made aware of the lawsuit, communications took place between the parties, and Defendants were provided with a copy of the petition.

K.S.A. 2015 Supp. 60-204 contains a savings provision, which provides:

> "The methods of serving process set out in article 3 of this chapter constitute sufficient service of process in all civil actions and proceedings, but are alternatives to and do not restrict different methods specifically provided by law. Substantial compliance with any method of serving process effects valid service of process if the court finds that, notwithstanding some irregularity or omission, the party served was made aware that an action or proceeding was pending in a specified court that might affect the party or the party's status or property."

In other words, service of process shall be deemed valid notwithstanding some irregularity or omission, if the plaintiff substantially complied with the applicable service statutes and the defendant was made aware of the pending action or proceeding against his person, status, or property. K.S.A. 2015 Supp. 60-204. In *Fisher*, our Supreme Court clarified that substantial compliance means "'"compliance in respect to the essential matters necessary to assure every reasonable objective of the statute."'" [Citation omitted.]" 298 Kan. at 490.

Plaintiffs did not raise this particular issue below, and, generally, issues asserted for the first time on appeal are not properly before this court for review. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011). There are several exceptions to the general rule that a new legal theory may not be asserted for the first

time on appeal, and Kansas Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41) requires an appellant to explain why an issue that was not raised below should be considered. See *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008), *cert. denied* 555 U.S. 1778 (2009) (outlining exceptions). Litigants who fail to comply with this rule risk a finding that the issue is improperly briefed and will be deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) (cautioning future litigants to comply with Rule); *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015) ("We are now sufficiently post-*Williams* that litigants have no excuse for noncompliance with Rule 6.02[a][5].").

Plaintiffs neglect to explain why our court should consider the applicability of K.S.A. 2015 Supp. 60-204 for the first time on appeal. Plaintiffs mention that our Supreme Court issued its ruling in *Fisher* "[a]fter the filing of the responses in the district court on the issue of insufficient service," which suggests a justification for their failure to raise this issue below. But *Fisher* was decided on December 13, 2013; therefore, Plaintiffs could have raised any issues related to *Fisher* at the motion to dismiss hearing held on January 16, 2014. In fact, Hawver was obviously aware of *Fisher* as he attempted to rely upon this case in another context during the hearing.

Nevertheless, even if Plaintiffs had preserved this issue, their argument fails. The savings provision set forth in K.S.A. 2015 Supp. 60-204 only operates to validate an otherwise ineffective attempt at service if the plaintiff substantially complied with one of the statutory methods of serving process. *Fisher*, 298 Kan. 482, Syl. ¶ 2. As explained earlier, Plaintiffs did not make any attempt to serve Defendants prior to the expiration of the original 90-day period. "K.S.A. 60-204 was not intended to create new methods of serving process." 298 Kan. at 491. Likewise, a "defendant's fortuitous acquisition of . . . awareness [of the action] does not affect [the] calculus[;] K.S.A. 60-204's validation must emanate from the serving party's actions." 298 Kan. at 492.

16

For all these reasons, we conclude that the savings provision of K.S.A. 2015 Supp. 60-204 is not applicable in this case.

THE UNIQUE CIRCUMSTANCES DOCTRINE

Alternatively, Plaintiffs urge us to apply the unique circumstances doctrine to prevent their civil action from being dismissed as time-barred. Although our Supreme Court has determined that use of the unique circumstances doctrine to exercise jurisdiction over an untimely appeal is not proper because appellate courts have no authority to create equitable exceptions to jurisdictional requirements, the court has determined that the doctrine remains viable to save a cause of action from being dismissed on statute of limitations grounds. See *Woods v. Unified Gov't of Wyandotte County/KCK*, 294 Kan. 292, 298-99, 275 P.3d 46 (2012); *Board of Sedgwick County Comm'rs v. City of Park City*, 293 Kan. 107, Syl. ¶ 3, 260 P.3d 387 (2011); *Baeza*, 2015 WL 7162332, at *9-10.

Plaintiffs did not raise this issue below. In fact, rather than asking for an application of the unique circumstances doctrine in the district court, Hawver merely questioned whether Plaintiffs should be "so severely penalized" for the district judge's error in granting an extension without making a finding of good cause. Again, issues asserted for the first time on appeal are not properly before this court for review. See *Wolfe Electric, Inc.*, 293 Kan. at 403. Plaintiffs neglected to explain why we should address the applicability of the unique circumstances doctrine for the first time on appeal. In light of our Supreme Court's directives advising litigants of the ramifications of failing to explain why an issue that was not raised below should be considered, we decline to address this issue. See *Williams*, 298 Kan. at 1085; *Godfrey*, 301 Kan. at 1044.

Affirmed.